Opinion issued April
28, 2011



In The

Court of Appeals

For The

First District of Texas

————————————

NO. 01-09-00808-CV

————————————

J.L.L.,
Appellant

V.

THE STATE OF TEXAS, Appellee



 



 

On Appeal from the County
Court at Law Number Three

Fort
Bend County, Texas



Trial Court Cause No.
12557A

 



 

MEMORANDUM
OPINION

          Appellant,
J.L.L., appeals an order of disposition finding that he engaged in delinquent
conduct by committing criminal mischief when he was a juvenile.  See Tex. Fam. Code Ann. § 51.03(a) (West Supp.
2010); Tex. Penal Code Ann. § 28.03(a)(1) (West Supp. 2010). 
In two issues, appellant contends that he is entitled to a new trial
because he received ineffective assistance of counsel based on his trial
counsel’s dual representation of the codefendant and based on his trial
counsel’s numerous alleged performance deficiencies.  In his remaining issue, appellant
alternatively contends that he is entitled to a hearing on his motion for new
trial because the trial court abused its discretion by not conducting a
hearing.  We conclude that the trial
court did not abuse its discretion by allowing appellant’s motion for new trial
to be overruled by operation of law nor by failing to conduct a hearing on the
motion for new trial.  We affirm.

Background

          During
the pre-dawn hours on September 7, 2008, in the Pheasant Creek neighborhood
subdivision in Fort Bend County, Texas, a car, a truck, and a garage door were
spray-painted in gold paint with explicit pictures, various profanities, and a
racial slur.  In the same neighborhood
around the same time, there was also a fourth occurrence, the spray-painting of
a house, but the occupant did not wish to prosecute.  At the time, appellant lived in the same
neighborhood as a number of other juveniles with whom he was either friends or
acquaintances:  P.B. (herein “the
codefendant”), M.A., C.B., W.F., E.M., J.H., and K.S.

          Around
11:30 p.m. the previous night, after attending a car show held on Westheimer
Street in Houston, two juveniles, M.A. and C.B., were returning to the Pheasant
Creek neighborhood, where they each lived. 
M.A and C.B. saw appellant walking on the street in their
neighborhood.  They briefly spoke with
appellant before proceeding to M.A.’s home. 
Around 1:00 a.m., M.A. and C.B. went for a quick trip by C.B.’s
home.  According to C.B.’s testimony, on
their way back, they again saw appellant walking around.  Appellant told them to look at the graffiti
that he had done to the truck, the car, the garage, and the house.  M.A., however, described the event differently,
stating that appellant called him on the phone to tell him that he had done the
graffiti.  M.A. and C.B. went to see the
graffiti themselves, which they found as appellant had described.  They then returned to M.A.’s house.

          M.A.
telephoned W.F., who lived adjacent to the truck owner, to tell him that his
neighbor’s truck had been spray-painted. 
W.F., who had been asleep, walked outside to see it for himself, but he
could not see anything because it was too dark outside.  W.F. testified that he saw M.A. and C.B.
drive by his house at around 3:15 a.m. 
M.A. and C.B. both acknowledged driving by W.F’s house but at an earlier
time.  W.F. testified that the next
morning, he received a text message from appellant, stating that he would be
coming over to W.F.’s house for a family barbecue.  However, as revealed by the State in its
discovery responses, “phone records for [W.F.’s cell phone number] do not show
[any] text message to [W.F.].” 
Nevertheless, at trial, defense counsel did not impeach W.F. with this
evidence.  When appellant arrived at the
barbecue, he told W.F. that he had spray-painted the neighbor’s truck, the car,
and the garage.

          The
officer assigned to the case, Detective White, contacted the truck owner, who
stated that he had spoken with W.F. and that W.F. had knowledge regarding the
spray-painting incident.  The truck owner
also suggested that appellant and another boy might be culpable for the
damage.  White went to speak with
appellant at his high school.  Appellant
denied having participated in the spray-paintings.  During his investigation, White briefly spoke
with E.M. and J.H., the latter a self-admitted member of the MS 13 gang.  J.H.’s mother was the fourth victim of
spray-painting, which was not prosecuted. 
E.M. and J.H. told White that around 2:00 a.m. on September 7, they saw
the codefendant walking around the neighborhood.  E.M. and J.H. reported that they saw the
codefendant speak to a Fort Bend County deputy, but the Fort Bend County Sheriff’s
Dispatch had no record of that encounter.

          The
State’s petition alleged that appellant engaged in delinquent conduct,
specifically, that he committed criminal mischief by intentionally and
knowingly making markings, drawings, paintings, slogans, and inscriptions on a
car, a truck, and a garage.  In a
separate petition, the State alleged that the codefendant had engaged in the
same delinquent conduct.  Both defendants
retained the same trial counsel (herein “Trial Counsel”).  The codefendant was tried first in a
different court under a different cause number. 
At the end of the codefendant’s trial, the jury returned a verdict of
“not true.”  A week later at the
beginning of appellant’s trial, the State made a motion in limine, which the
trial court granted, requesting that Trial Counsel approach the bench prior to
mentioning the codefendant.

          At
appellant’s trial, Trial Counsel cross-examined Detective White, inquiring as
to the inconsistency between E.M. and J.H.’s report that they had seen the
codefendant in the neighborhood talking to a deputy and the lack of a police
record documenting the encounter.  At two
points during this inquiry, the State requested that the parties approach the
bench.  Two off-the-record bench
conferences were held in close succession. 
Immediately after the second off-the-record bench conference, the trial
court conducted a conference on the record outside the presence of the
jury.  Objecting to questioning regarding
the codefendant, the State asserted:

It is obvious that defense
counsel’s testimony with Detective White about [the codefendant] being
a—quote—“co-defendant and/or suspect”— . . . [is] an attempt to paint
the picture that [the codefendant] is really the culprit in this case.  I want it on the record that Mr. Villalon
represents both of these young men; and if he’s going to point fingers, that is
a clear conflict of interest and he may not represent this juvenile
. . . because that’s a clear conflict, accusing another client, when
you represent two clients.

 

In response, Trial Counsel explained,

 

[Blaming the codefendant] is not
my intention at all.  All I’m trying to
point out . . . is the fact that this police officer undertook an
investigation; spoke with different people; and then, when he ultimately
investigated the case, he realized that what they were telling him was
. . . not true.

 

The trial court was satisfied with the limited
purpose Trial Counsel sought to show, but instructed him, “[Y]ou can’t shift it
off on [the codefendant].”  Trial Counsel
then said, “I will cease and desist from referring to [codefendant].”

          During
his cross-examination of W.F., Trial Counsel attempted to impeach W.F. with a
statement made by K.S. in the prior trial. 
K.S.’s mother was the owner of the garage on which the racial slur had
been spray-painted.  Without any
objection having been made, the trial court called Trial Counsel and the State
to approach for a third off-the-record conference.  As before, this conference was immediately
followed by an on-the-record conference. 
The trial court instructed Trial Counsel that he could impeach using
K.S.’s prior statement but that he could not refer to the fact that it was made
during a court proceeding.

          During
the defense’s case-in-chief, Trial Counsel called appellant’s mother,
stepfather, and grandmother to testify regarding appellant’s alibi on the night
of September 6 through the next morning. 
Appellant’s witnesses all testified that appellant was home, watching a
wrestling match with his family, and that he did not leave the house that
night.  

          The
jury in appellant’s trial returned a verdict finding that appellant engaged in
delinquent conduct as alleged in the petition. 
The trial court entered an order of disposition placing appellant on
probation until his 18th birthday.  After
trial, the court granted appellant’s motion to substitute his attorney.  Appellant timely filed a motion for new trial
asserting that he was ineffectively assisted by Trial Counsel.  The written motion requested a hearing to
introduce evidence not apparent from the record to support his motion.  Appellant based his
ineffective-assistance-of-counsel argument on a claimed actual conflict of
interest posed by Trial Counsel’s dual representation of him and the
codefendant and on numerous alleged performance deficiencies.  Appellant attached two affidavits to his
motion for new trial:  one from
appellant’s mother and another from the codefendant’s mother.

          In
the first affidavit, appellant’s mother stated that she and her husband hired
Trial Counsel to represent appellant in this matter without having signed a
formal contract and that she was present during all discussions between
appellant and Trial Counsel.  Concerning
the issue of conflict of interest, she stated that Trial Counsel briefly informed
her there was no conflict posed by the dual representation; that Trial Counsel
never discussed the issue or concerns regarding the dual representation; that
Trial Counsel never discussed the hypothetical defensive strategy of blaming
the codefendant; that Trial Counsel never discussed or offered a waiver of
conflict; and that a waiver of conflict was never signed.

          In
the other attached affidavit, the codefendant’s mother stated that she and her
husband hired Trial Counsel to represent the codefendant and that she was
present during all discussion between them. 
Concerning the issue of conflict of interest, she stated that Trial
Counsel mentioned the issues concerning conflict but told them he would be able
to represent both defendants, that Trial Counsel never discussed or offered a
waiver of conflict, and that a waiver of conflict was never signed.  Additionally, she stated that the codefendant
was prepared to testify that he was not with appellant on the night of the
vandalism in order to contradict the claims of witnesses who, at the first trial,
testified that they saw the two defendants together but that Trial Counsel
instructed the codefendant not to appear.

          In
its response to appellant’s motion for a new trial, the State attached the
affidavit of Trial Counsel.  He explained
that he was first approached by the codefendant’s stepfather, who indicated
that appellant was also interested in hiring him.  Trial Counsel stated that when he first met
with appellant and his parents on the day they hired him, he explained to them
that the representation of multiple defendants could possibly, but not
necessarily, entail a conflict of interest and that he would need to review the
State’s file and other evidence in order to make a precise determination
whether any conflict of interest existed. 
After reviewing the State’s file and discussing the case with both
defendants and their parents, Trial Counsel determined that there was no
admissible, direct evidence that implicated either defendant in the acts of
vandalism and that each defendant and their families consistently maintained
that each defendant was at home when the vandalism occurred.  Thus, trial counsel determined the defendants
had two consistent defense theories:  first,
there was no direct or physical evidence implicating either defendant and,
second, each had an alibi.  Trial Counsel
concluded that the codefendants had similar interests, which did not
conflict.  Trial Counsel stated that
during the middle of the codefendant’s trial, he first found out that the
State’s witnesses were claiming they had seen appellant and the codefendant
together on the night of the vandalism. 
According to Trial Counsel, both appellant and the codefendant
maintained their alibi defense despite the eyewitness testimony placing them
together that night.

          The
trial court, without granting a hearing or making a ruling, allowed appellant’s
motion for a new trial to be overruled by operation of law.  

Ineffective Assistance of Counsel

          In
his first and third issues, appellant contends that he is entitled to a new
trial because he received ineffective assistance of counsel based on Trial
Counsel’s dual representation, which posed an actual conflict of interest
adversely affecting Trial Counsel’s performance, and based on Trial Counsel’s
numerous alleged performance deficiencies.

          A.      Applicable Law for Motions for New
Trial

“The requirements governing an
appeal [from an order of juvenile court] are as in civil cases
generally.”  Tex. Fam. Code Ann.
§ 56.01(b) (West
Supp. 2010).  If an appellant asserts on
appeal an ineffective-assistance-of-counsel claim that he previously asserted
in a motion for new trial that the trial court denied or allowed to be
overruled by operation of law, an appellate court analyzes the claim as a
challenge to the denial or overruling of the motion for new trial.  See Walker
v. Tex. Dep’t of Family & Protective Servs., 312 S.W.3d 608, 623 (Tex.
App.—Houston [1st
Dist.] 2009, pet. denied) (citing Biagas
v. State, 177 S.W.3d 161, 170 (Tex. App.—Houston [1st Dist.] 2005, pet. ref’d)).  An appellate court will reverse a trial
court’s ruling on a motion for new trial only if the trial court abused its
discretion in its ruling.  Strackbein v. Prewitt, 671 S.W.2d 37, 38
(Tex. 1984).  This standard of review
applies regardless of whether the motion for new trial has been denied by an
express ruling or overruled by operation of law.  Awoniyi
v. McWilliams, 261 S.W.3d 162, 165 (Tex. App.—Houston [14th Dist.] 2008, no pet.).  Thus, an appellate court will reverse only if
the trial court’s decision is arbitrary or unreasonable, viewing the evidence
in the light most favorable to the ruling. 
Downer v. Aquamarine Operators,
Inc., 701 S.W.2d 238, 241–42
(Tex. 1985); Imkie v. Methodist Hosp.,
326 S.W.3d 339, 344 (Tex. App.—Houston
[1st Dist.] 2010, no pet.).

          B.      Applicable Law
for Assistance of Counsel

          A juvenile
has a right to the effective assistance of counsel at every stage of juvenile
proceedings.  Tex. Fam. Code Ann. § 51.10(a) (West 2008); In re J.M.S., 43 S.W.3d 60, 63 n.1 (Tex.
App.—Houston [1st Dist.] 2001, no pet.). 
Because juvenile proceedings are quasi-criminal in nature, In re D.I.B., 988 S.W.2d 753 S.W.2d 753,
756 (Tex. 1999), an appellate court applies the criminal standard for
evaluating claims of ineffective assistance of counsel.  In re
J.M.S., 43 S.W.3d at 63.

          To
prevail on a claim of ineffective assistance of counsel, a defendant must prove
by a preponderance of the evidence that (1) defense counsel’s performance was
deficient such that his assistance fell below an objective standard of
reasonableness and (2) the deficiency caused the defendant prejudice such that
there is a reasonable probability that but for the deficient performance, the
outcome would have been different.  Strickland v. Washington, 466 U.S. 668,
687–88, 104 S. Ct. 2052, 2064 (1984); Thompson
v. State, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999).  In proving that his counsel’s performance was
deficient, a defendant must overcome a strong presumption that counsel’s action
was a sound trial strategy.  Strickland, 466 U.S. at 692, 104 S. Ct.
at 2067; Thompson, 9 S.W.3d at
813.  The effectiveness of assistance of
counsel is reviewed in context with the totality of the representation and the
particular circumstances of each case.  Strickland, 466 U.S. at 695, 104 S. Ct.
at 2069; Thompson, 9 S.W.3d at
813.  Any allegation of ineffectiveness
must be firmly founded in the record, and the record must affirmatively
demonstrate the alleged ineffectiveness. 
Thompson, 9 S.W.3d at 813.

          C.      Analysis
of Conflict of Interest as Ground for Ineffective Assistance

 

In his
first issue, appellant contends that he was ineffectively assisted by Trial Counsel because Trial Counsel operated under an actual
conflict of interest by representing both appellant and the codefendant and
that this dual representation adversely affected Trial Counsel’s performance because it resulted in the foreclosure
of the defense strategy of blame shifting or raising the issue of a second
suspect.

          1.       Actual Conflict of Interest

Ineffective assistance of counsel may result from an attorney’s
conflict of interest.  Strickland, 466 U.S. at 692, 104 S. Ct. at 2067; Ex parte Murrow, 952 S.W.2d 530, 538
(Tex. Crim. App. 1997).  Prejudice to the
defendant is presumed if the defendant shows that (1) his trial counsel
labored under an actual conflict of interest and (2) the conflict had an
adverse effect on specific instances of counsel’s performance at trial.  Strickland, 466 U.S. at 692, 104 S. Ct. at 2067; Cuyler v. Sullivan, 446 U.S. 335, 348–350, 100 S. Ct. 1708,
1718–19 (1980); Monreal v. State, 947 S.W.2d 559, 564
(Tex. Crim. App. 1997).[1]
 Under the first prong, a trial counsel
labors under an actual conflict of interest if he actively represents interests
requiring him to make a choice between advancing his client’s interest in a
fair trial and advancing other interests, including his own, to the detriment
of his client’s interest.  Acosta v. State, 233 S.W.3d 349, 353,
355 (Tex. Crim. App. 2007) (quoting Monreal,
947 S.W.2d at 564); see Sullivan, 446 U.S. at 349–50, 100 S. Ct. at
1719.  For example, an actual
conflict of interest exists if a plausible defense strategy or tactic would be
foreclosed due to the representation of another interest.  See
Gaston v. State, 136 S.W.3d 315, 318
(Tex. App.—Houston [1st
Dist.] 2004, pet. struck); Ramirez v.
State, 13 S.W.3d 482, 487 (Tex. App.—Corpus
Christi 2000, pet. dism’d) (citing Perillo v. Johnson, 79 F.3d 411, 449 (5th Cir. 1996)).  Under
the second prong, a conflict adversely affects a trial counsel’s performance if
during trial, counsel in fact acts to the detriment of his client on behalf of
those other interests.  Acosta, 233 S.W.3d at 355–56; Wiggins v. State, No. 01-07-00672-CR, 2009 WL 2231806, at *10 (Tex.
App.—Houston [1st
Dist.] July 23, 2009,
pet. ref’d) (mem. op. on reh’g).

Following the State’s objection, the trial court instructed
Trial Counsel not to raise the issue of a codefendant.  This consequently foreclosed the strategy of
blaming the codefendant.  See Thompson v. State, 94 S.W.3d 11, 19 (Tex. App.—Houston [14th Dist.]
2002, pet. ref’d) (“If a lawyer represents two or more co-defendants in the
same matter, she is legally and ethically deprived of utilizing the
time-honored defense of blaming the other defendant.”).  However,
the foreclosure of a theoretically possible strategy results in a presumption
of prejudice only if that strategy is plausible.  See Gaston, 136 S.W.3d at 318; Ramirez, 13 S.W.3d at 487.  Here, there
is no evidence that blaming the codefendant or raising the issue of a second
suspect would have been a plausible trial strategy in light of the evidence
that appellant and the codefendant were seen together around the time of the
offense.  The only evidence in the record
or attested to in the affidavits relating to the motion for new trial that
implicates the codefendant is testimony from the prior trial from witnesses
claiming to have seen both defendants together on the night of the
vandalism.  This evidence undermines,
rather than supports, the strategy of blaming the codefendant because it
implicates each equally.  As Trial Counsel explained to the court
after the State’s objection, raising the issue of the codefendant was “not
[his] intention at all.”  See Holloway v. Arkansas, 435 U.S. 475,
485, 98 S. Ct. 1173, 1179 (1978) (deferring to trial counsel’s representations
regarding conflict of interest because “attorney representing two defendants in
a criminal matter is in the best position professionally and ethically to
determine when a conflict of interest exists or will probably develop in the
course of a trial.”).  As described in
his affidavit, Trial Counsel concluded, based on his review of the State’s
files and the consistent, unequivocal statements made to him by each defendant
and their families, that there was no actual conflict of interest as their
defenses were the essentially the same: 
pointing out the lack of physical or direct evidence and presenting an
alibi.  See James v. State, 763 S.W.2d 776, 780 (Tex. Crim. App. 1989) (no
actual conflict of interest where counsel consistently maintains each
codefendant’s alibi defense); see also Gaston,
136 S.W.3d at 320–22 (finding no actual conflict of interest where trial
counsel consistently pursued joint defense, which, if successful, would result
in acquittal of both codefendants).  No
evidence shows that appellant would have been interested in pursuing a blame-the-other-defendant
strategy.  See James, 763 S.W.2d at 780 (no actual conflict of interest posed
by dual-representation of codefendants where there is no evidence that
appellant would have been willing to forego alibi defense or to incriminate
codefendant).

 
Because he has failed to show that the strategy of blaming the
codefendant is plausible, we hold that appellant has failed to show an actual
conflict of interest.  See Strickland, 466 U.S. at 692, 104 S.
Ct. at 2067; Sullivan, 446 U.S. at
348–350, 100 S. Ct. at 1718–19; Acosta,
233 S.W.3d at 353, 355; Monreal, 947
S.W.2d at 564; Gaston, 136 S.W.3d at
318; Ramirez, 13 S.W.3d at 487.  

          2.       Trial Court’s
Duty to Inquire

During Trial Counsel’s cross-examination of Detective
White, the State objected on the ground that blaming the codefendant would be a
“clear conflict of interest.”[2]  We must, therefore, address the consequences
of the trial court’s failure to inquire concerning the multiple
representation.  Appellant contends that
following the State’s objection, the trial court erred by failing to conduct an
inquiry into the propriety of Trial Counsel’s dual representation of appellant
and the co-defendant.  In Sullivan, the Supreme Court determined
that a trial court has a duty to conduct an inquiry into the propriety of a
multiple representation only if it knows or reasonably should know that a
particular conflict exists.  Sullivan, 446 U.S. at 347, 100 S. Ct. at
1717; see Mickens v. Taylor, 535 U.S.
162, 168–69, 122 S. Ct. 1237, 1242 (2002) (distinguishing
“particular conflict” from “vague, unspecified possibility of conflict, such as
that which ‘inheres in almost every instance of multiple
representation’”).  Here, the trial court
reasonably knew about the particular conflict based on the State’s objection on
the ground of a “clear conflict of interest” and the court’s admonishment to
trial counsel to refrain from blaming the codefendant.

We must, therefore, address the consequences of the
trial court’s failure to inquire concerning the multiple representation.  In Mickens,
the Supreme Court expressly rejected a rule that would have required reversal,
regardless of any adverse effect, if the trial court knew or should have known
of a potential conflict of interest but failed to conduct an inquiry.  Mickens,
535 U.S. at 170–73, 122 S. Ct. at 1243–44.  The Court explained that a “trial court’s
awareness of a potential conflict neither renders it more likely that counsel’s
performance was significantly affected nor in any other way renders the verdict
unreliable.”  Id. at 173, 122 S. Ct. at 1244. 
“Nor does the trial judge’s failure to make the Sullivan-mandated inquiry often make it harder for reviewing courts
to determine conflict and effect, particularly since those courts may rely on
evidence and testimony whose importance only becomes established at the
trial.”  Id.  “Nor, finally, is
automatic reversal simply an appropriate means of enforcing Sullivan’s mandate of inquiry.”  Id.

The trial court’s failure to inquire concerning the
multiple representation, therefore, is subject to a harmless error
analysis.  Appellant, however, cannot
show harm because on appeal, he has failed to show an actual conflict of
interest adversely affecting Trial Counsel’s performance.  See id.
at 173–74, 122 S. Ct. at 1245 (“since the trial court’s
failure to make the Sullivan-mandated
inquiry does not reduce the [defendant’s] burden of proof; it was at least
necessary, to void the conviction, for petitioner to establish that the
conflict of interest adversely affected his counsel’s performance”).  We have no basis to conclude that the trial
court would have discovered anything different if it had fulfilled its Sullivan-mandated duty to inquire.  We conclude that the trial court’s failure to
inquire into the propriety of the multiple representation was harmless
error.  See id.

          3.       Trial Court’s Duty to Admonish

Appellant also contends that following the State’s
objection, the trial court erred by failing to conduct a Garcia hearing.  Unlike the Sullivan-mandated duty of inquiry into potential conflicts of interest, a Garcia hearing concerns waiver of actual conflicts of interest.  United States v. Greig, 967 F.2d 1018, 1022 (5th Cir. 1992); Ramirez, 13 S.W.3d at 487.  The right to
conflict-free counsel may be waived, but in order to be effective, the record
must show the waiver was done knowingly, intelligently, and voluntarily.  Greig, 967 F.2d at 1021; Ramirez, 13 S.W.3d at 487 n.2. 
In a Garcia hearing, a trial court addresses
the defendant personally to ensure that (1) he is aware that a conflict of
interest exists, (2) he realizes the potential hazards to his defense by
continuing with current counsel under the onus of the conflict, and (3) he is
aware of his right to obtain other, conflict-free counsel.  Greig, 967 F.2d at 1022; United States v. Casiano, 929
F.2d 1046, 1052 (5th Cir. 1991); Ramirez,
13 S.W.3d at 487.  By conducting a Garcia hearing, the trial court ensures
the record shows the defendant knowingly, intelligently, and voluntarily waived his right to conflict-free
counsel.  See Greig, 967 F.2d at 1022; Ramirez, 13 S.W.3d at 487.

A trial court has a duty to conduct a Garcia hearing if (1) there exists an
actual conflict of interest and (2) the trial court is alerted to or knows of
the existence of that actual conflict of interest.  Greig,
967 F.2d at 1022; Ramirez, 13 S.W.3d at 487. 
Even assuming
the trial court agreed with the State that blaming the codefendant would pose a
“clear conflict of interest,” it does not follow that an actual conflict of
interest in fact existed.  In the Sixth
Amendment, ineffective-assistance-of-counsel context, “actual conflict of
interest” has a specialized meaning.  See Mickens, 535 U.S. at 172 n.5, 122 S.
Ct. at 1244 n.5.  We conclude that
because appellant has failed to show an actual conflict of interest adversely
affecting Trial Counsel’s performance, there was no need for a waiver and the
trial court had no duty to conduct a Garcia
hearing.  See United States v. Carpenter, 769 F.2d 258, 263 (5th Cir.1985) (no error for
failure to hold Garcia hearing absent
actual conflict of interest); cf. Greig,
967 F.2d at 1022; Ramirez, 13 S.W.3d at 487.

We overrule appellant’s first issue.

          D.      Analysis of Numerous Alleged Performance
Deficiencies

In his
third issue, appellant contends that he was ineffectively assisted by Trial Counsel, who was deficient for
numerous reasons.  Specifically,
appellant complains that Trial Counsel:

(1)      
failed repeatedly to object to improper
testimony or arguments;

(2)      
failed to object to the State’s closing argument
on the ground that it referred to facts not on the record to improperly bolster
the credibility of State witnesses;

(3)      
failed to object to the trial court’s ruling
that limited testimony regarding the codefendant and thus failed to zealously
advocate for appellate;

(4)      
failed to ensure that any bench conferences
relating to the introduction of evidence, testimony, or trial procedures were
recorded or preserved for appellate review;

(5)      
failed to fully cross-examine witnesses
regarding any prior inconsistent statements and evidence from the trial of the
codefendant;

(6)      
failed to elicit testimony and evidence, disclosed by the State in its
discovery responses, that W.F.’s cell phone records do not show a text message
from appellant as W.F. claimed he received;

(7)      
failed to ensure that any conflict of interests
between codefendants was properly explained to each party or to obtain a
voluntary waiver from each party; and

(8)      
failed to ensure the Court held a hearing
regarding the conflict once the Court was aware of the conflict of interest so
as to ensure appellant fully understood and had knowingly waived the conflict
of interest.

Appellant also complains that there
exist additional unspecified deficiencies, such as a failure to impeach, that
are not available for full appellate review without a hearing on his motion for
new trial.    Appellant asserts that but for the totality of these deficiencies,
especially the deficiency regarding impeaching and eliciting contradictory
information, there is a reasonable probability that the result of the trial
would have been different.  Appellant
explains that this is so because the State’s case was based primarily upon
witness testimony reporting that appellant had admitted committing the offense
and that but for Trial Counsel’s deficiencies, the jury would have had
additional information to assess the credibility of the State’s witnesses.

1.       Repeated
Failure
to Object to Improper Testimony or Arguments

 

In his first allegation of deficient performance, appellant
asserts that Trial Counsel was deficient by repeatedly
failing to object improper testimony or arguments.  However, appellant fails to indentify which
testimony or arguments he regards as improper. 
Therefore, appellant’s first allegation of deficient performance fails
because it is inadequately briefed.  See Tex.
R. App. P. 38.1(i) (“The brief must contain a clear and concise argument
for the contentions made, with appropriate citations to authorities and to the
record.”).

                   2.       Failure to Object to the State’s
Closing Argument

In
his second allegation of deficient performance, appellant asserts that Trial Counsel was deficient for failing to
object the following statements in the State’s closing argument: 

[The State’s juvenile witnesses
were] not here voluntarily.  They were
here under Court-order subpoena. . . .  It’s not easy for kids to have to be
Court-ordered to tell the truth about their friends.

 

Appellant contends that Trial Counsel should have
objected on the ground that the State referred to facts not on the record to
improperly bolster the credibility of State witnesses.

A
proper jury argument generally falls within one or more of the following
categories: (1) summation of the evidence; (2) reasonable deductions from the
evidence; (3) answers to arguments by opposing counsel; and (4) pleas for law
enforcement.  Palermo v. State, 992 S.W.2d 691, 696 (Tex. App.—Houston [1st
Dist.] 1999, pet. ref’d) (citing Wilson
v. State, 938 S.W.2d 57, 59 (Tex. Crim. App. 1996)).  In drawing inferences from the evidence,
attorneys have wide latitude as long as the inferences drawn are reasonable,
fair, legitimate, and offered in good faith. 
Gaddis v. State, 753 S.W.2d
396, 398 (Tex. Crim. App. 1988).  The
jury is free to accept or reject the conclusions and inferences suggested by
the attorney in closing argument.  See id. at 400.  The attorney may state an opinion based on
the evidence in the record if the opinion does not constitute unsworn testimony.  Bui v.
State, 964 S.W.2d 335, 345 (Tex. App.—Texarkana 1998, pet. ref’d).

There
is no indication that the reference to a subpoena improperly bolstered any
witness’s credibility.  Every witness,
whether testifying under threat of court-ordered subpoena or not, must take an
oath to tell only the whole truth, under penalty of perjury.  Additionally, appellant fails to indicate how
an objection to these arguments, even if sustained, could have produced a
better outcome than refraining to object in order, for example, to avoid
drawing more attention to the arguments. 
See Pittman v. State, 9 S.W.3d
432, 436 (Tex. App.—Houston [14th Dist.] 1999, no pet.) (stating that trial
counsel’s decision not to properly preserve error may have been to prevent
drawing attention to the matter).  Here,
failing to object cannot be said to be an unsound trial strategy.  See
Stafford v. State, 813 S.W.2d 503, 508 (Tex. Crim. App. 1991) (stating that
counsel’s decision not to object to evidence of second drug buy might be sound trial
strategy when evidence conclusively proved defendant not present for second
drug buy).

3.       Failure to Object to Trial Court’s
Ruling Limiting Testimony Regarding Codefendant

 

          In his third allegation of deficient
performance, appellant asserts that Trial Counsel failed to object to the trial
court’s ruling that limited testimony regarding the codefendant and thus failed
to zealously advocate for appellant.  As trial counsel
explained to the trial court prior to its ruling, it was never the defense’s strategy
to raise the issue of a codefendant or to blame the codefendant.  Thus, even assuming Trial Counsel had a valid
objection to the trial court’s ruling, there is no evidence that the ruling
foreclosed a trial strategy that otherwise would have been pursued.  The trial court’s ruling did not affect
appellant’s alibi defense.  Trial Counsel
zealously advocated this defense by cross-examining the State’s witnesses to
establish that no witness actually saw appellant commit the graffiti and that
there was no physical evidence linking appellant to the graffiti.  Additionally, during the defense’s
case-in-chief, Trial Counsel presented the testimony of appellant’s mother,
father, and grandmother who each testified that appellant was at home
throughout the night in question. 
Because not objecting to the trial court’s ruling was consistent with
the Trial Counsel’s defense strategy, we cannot say that Trial Counsel’s assistance fell below an objective
standard of reasonableness.  See Strickland,
466 U.S. at 688, 104 S. Ct. at 2065; Thompson,
9 S.W.3d at 813.

4.       Failure to Ensure Bench
Conferences Relating to Introduction of Evidence, Testimony, or Trial
Procedures Were Recorded or Preserved for Appellate Review

 

          In his fourth
allegation of deficient performance, appellant asserts that Trial Counsel
failed to ensure that any bench conferences relating to the introduction of
evidence, testimony, or trial procedures were recorded or preserved for
appellate review.  Appellant complains about three off-the-record
bench conferences that took place during the trial.  Two off-the-record conferences occurred
during Trial Counsel’s cross-examination of White after Trial Counsel
referenced the codefendant and the State objected.  While the conferences were not recorded, they
were immediately followed by an on-the-record conference where the State’s
objection and Trial Counsel’s response were fully discussed.  Likewise, the third off-the-record conference
was immediately followed by an on-the-record conference concerning Trial
Counsel’s reference that a prior statement, with which he was trying to impeach
W.F., had been made during a court proceeding. 
Given the context that gave rise to these three off-the-record
conferences, it appears they concerned the same issues discussed in the
on-the-record conferences that immediately followed; however, nothing in the
record or in the affidavits relating to the motion for new trial indicates this
precisely.  Because Trial Counsel had recorded
and preserved the substance of these discussions, we cannot say that Trial
Counsel’s assistance
fell below an objective standard of reasonableness.  See
Strickland, 466 U.S. at 688, 104 S.
Ct. at 2065; Thompson, 9 S.W.3d at
813.

5.       Failure to Fully Cross-Examine
Witnesses Regarding Any Prior Inconsistent Statements and Evidence From Trial
of  Codefendant

 

          In his fifth
allegation of deficient performance, appellant asserts that Trial Counsel failed
to fully cross-examine witnesses regarding any prior inconsistent statements
and evidence from the trial of the codefendant. 
Appellant does not specify which prior inconsistent statements and
evidence that Trial Counsel should have used to impeach the State’s witnesses. 
The only evidence suggested in the affidavits relating to the
motion for new trial is witness testimony in the prior trial that they saw both
the codefendant and appellant together on the night in question.  Appellant was not deficient for not
cross-examining using this evidence because it undermines both appellant’s
actual alibi defense and his hypothetical defense of blaming the codefendant.

6.       Failure to Elicit Testimony and
Evidence, Disclosed by State in Discovery Responses, That W.F.’s Cell Phone
Records Do Not Show Text Message From Appellant as W.F. Claimed He Received

 

          In his sixth
allegation of deficient performance, appellant asserts that Trial Counsel failed
to elicit testimony and evidence, disclosed by the State in its discovery responses,
that W.F.’s cell phone records do not show a text message from appellant as W.F.
claimed he received.  While Trial Counsel
could have impeached W.F.’s testimony that he had received a text message with
the cell phone company’s records that indicated he had not, the existence of
the text message was a collateral matter. 
Additionally, trial counsel effectively impeached W.F.’s testimony that
he saw M.A. and C.B. at around 3:15 a.m. as they drove by his house by
eliciting testimony from M.A. and C.B., who both disagreed that they drove by
W.F.’s house around that time.  In light
of the totality of the representation, we cannot say that Trial Counsel’s
failure to impeach W.F. on a collateral matter fell below an objectively
reasonable standard.  See Strickland, 466 U.S. at 695–696, 104 S. Ct. at
2069; Thompson, 9 S.W.3d at 813.

7.       Failure
to Ensure that Any Conflict of Interests Between Codefendants was Properly
Explained to Each Party or to Obtain Voluntarily Waiver from Each Party

 

          In his
seventh allegation of deficient performance, appellant asserts that Trial
Counsel failed to ensure that any conflict of interests between
codefendants was properly explained to each party or to obtain a voluntary
waiver from each party in violation of Rule 1.06 of the Texas Disciplinary
Rules of Professional Conduct.  A lawyer
may represent codefendants if (1) the dual representation does not involve a
substantially related matter in which the codefendants’ interests are
materially and directly adverse and (2) it does not reasonably appear that the
lawyer’s responsibility to one codefendant is or will become adversely limited
by the lawyer’s responsibility to the other codefendant.  Tex.
Disciplinary Rules Prof’l Conduct R. 1.06(b) , reprinted in Tex. Gov’t Code
Ann., tit. 2, subtit. G, app. A (West 2005) (Tex. State Bar R. art. X, § 9).  If
either of the preceding conditions is not met, a lawyer may represent the
codefendants only if (1) he reasonably believes the representation of each will
not be materially affected and (2) each codefendant consents to dual
representation after full disclosure of the existence, nature, implications,
and possible adverse consequences of the common representation and the
advantages involved, if any.  Tex. Disciplinary Rules Prof’l Conduct R.
1.06(c).  

At the outset of his representation of the two codefendants,
Trial Counsel disclosed the possibility that a conflict of interest could
exist.  Appellant’s mother stated in her
affidavit that although Trial Counsel informed appellant that there was no
conflict of interest, he neither explained what “conflict of interest” meant
nor discussed issues concerning the conflict of interest.  Similarly, a waiver of conflict of interest
was never discussed, offered, or signed. 
However, under the disciplinary rule cited by appellant, Trial Counsel
had a responsibility to obtain each codefendant’s consent only if (1) their
interests were directly and materially adverse or (2) it reasonably appeared
that Trial Counsel’s responsibility to one codefendant would be adversely
limited by his responsibility to the other codefendant.  See
Tex. Disciplinary Rules Prof’l Conduct R.
1.06(b), (c); State Bar of Tex. v. Dolenz,
3 S.W.3d 260, 270 (Tex. App.—Dallas
1999, no pet.) (“[T]he exception [Rule 1.06(c)] to the rule [Rule 1.06(b)] is
in the nature of an avoidance or affirmative defense to professional
misconduct.”).

          As
Trial Counsel explained in his affidavit, after conducting an investigation of
the State’s files and after interviewing each codefendant and their families,
he determined that no conflict of interest in fact existed or would arise.  See
Tex. Disciplinary Rules Prof’l Conduct R.
1.06(b).  Appellant’s and the
codefendant’s interests were not directly and materially adverse because the
only defense strategies supported by the evidence, if successful, would have
resulted in the acquittal of both codefendants. 
See Tex. Disciplinary Rules Prof’l Conduct R. 1.06(b)(1).  Furthermore, appellant has not shown that
Trial Counsel’s responsibilities to him were adversely limited by the trial
court’s instruction to not raise the issue of the codefendant, which arose
because of the common representation.  See Tex.
Disciplinary Rules Prof’l Conduct R. 1.06(b)(2).  Because there was no conflict of interest and
it did not reasonably appear that one would arise, Trial Counsel had no responsibility
to obtain their consent.  See Tex.
Disciplinary Rules Prof’l Conduct R. 1.06(b), (c); Dolenz, 3 S.W.3d at 270.  We
cannot conclude that Trial Counsel’s performance was deficient because he
complied with the applicable disciplinary rule.

8.       Failure
to Ensure the Court Held a Hearing Regarding Conflict

 

In
his eighth allegation of deficient performance, appellant asserts that Trial
Counsel failed to ensure that the trial court held a hearing regarding
the conflict once the Court was aware of the conflict of interest so as to
ensure appellant fully understood and had knowingly waived the conflict of
interest.  As explained above, appellant
has failed to establish based on either the record or the motion-for-new-trial
affidavits that an actual conflict of interest exists.  Accordingly, we cannot say Trial Counsel was
deficient for failing to ensure the court held a hearing as Trial Counsel was
not required to obtain a waiver of the hypothetical conflict.  Moreover, there is no indication that appellant
would have changed counsel or defensive strategies had the trial court advised
him of the hypothetical conflict. 
Accordingly, even assuming trial counsel was deficient for failing to
ensure the Court held a hearing regarding the potential conflict, appellant has
failed to show a reasonable probability that but for the deficiency, the
outcome would have been different.  See Strickland, 466 U.S. at 687–88, 104
S. Ct. at 2064; Thompson, 9 S.W.3d at
812.  

9.       Additional
Deficiencies, Such as Trial Counsel’s Failure to Impeach, Are Not Available for
Review Without Hearing on Motion for New Trial

 

Finally,
appellant asserts the existence of additional deficiencies, such as Trial Counsel’s failure to
impeach, are not available for review without a proper hearing on appellant’s
motion for new trial as discussed below. 
However, appellant fails to identify what these additional deficiencies
are or explain how a hearing would enable him to adduce evidence establishing
any such additional deficiencies. 
Appellant’s catchall allegation of deficient performance fails because
it is inadequately briefed.  See Tex.
R. App. P. 38.1(i).

We conclude that appellant failed to establish that
Trial Counsel’s performance fell below an objectively reasonable standard.  See Strickland, 466 U.S. at 688, 104 S. Ct. at 2065; Thompson, 9 S.W.3d at 813.

We overrule appellant’ third issue.

Failure to Conduct Hearing of Motion for New Trial

          In his second issue, appellant
contends that the trial court abused its discretion by failing to hold an evidentiary hearing on his
motion for a new trial, which is premised on the same claim of
ineffective-assistance of counsel asserted on appeal.

          In general, juvenile proceedings are
governed by the Texas Rules of Civil Procedure. 
Tex. Fam. Code Ann. §
51.17(a) (West Supp. 2010).[3]  In a civil case, a trial court is obligated
to conduct a hearing on a motion for new trial if (1) the motion properly
requests a hearing, (2) the “motion presents a question of fact upon which
evidence must be heard,” and (3) the motion alleges facts that if true would
entitle the movant to a new trial.  Hensley v. Salinas, 583 S.W.2d 617, 618
(Tex. 1979); Neyland v. Raymond, 324
S.W.3d 646, 652–53 (Tex. App.—Fort Worth 2010, no pet.) (where supporting
affidavits fail to raise a question of fact regarding entitlement to new trial,
trial court is within its discretion to not holding hearing).

          As detailed in the preceding ineffective-assistance-of-counsel
analysis, which takes into account the facts alleged in appellant’s motion for
new trial and in the attached affidavits, the motion fails to present a
question of fact upon which evidence must be heard because the facts were included
in the affidavits that were presented to the trial court.  Accordingly, the
trial court did not abuse its discretion by not conducting a hearing on
appellant’s motion for new trial.  See Neyland, 324 S.W.3d at 652–53.

          We overrule appellant’s second issue.

Conclusion

 

We affirm the judgment of the trial
court.  

 

                                                                   Elsa
Alcala

                                                                   Justice


 

Panel
consists of Chief Justice Radack and Justices Alcala and Bland.











[1]           Additionally,
both an actual conflict of interest and prejudice are presumed if (1) the defendant objects at trial to a multiple representation
arrangement and (2) the trial court fails to appoint separate counsel or take
adequate steps to ascertain whether the risk is too remote to warrant separate
counsel.  Holloway v. Arkansas, 435 U.S. 475, 484, 489, 98 S. Ct. 1173,
1178–79, 1181 (1978); Lerma v. State,
679 S.W.2d 488, 498 (Tex. Crim. App. 1982). 
Appellant, however, did not object to the dual representation at trial,
and thus, an actual conflict of interest is not presumed.  See
Holloway, 435 U.S. at 484, 489, 98 S.
Ct. at 1178–79, 1181; Lerma, 679
S.W.2d at 498.  





[2]           It
appears the State may have been referring to the Texas Disciplinary Rules of Professional
Conduct.  See Tex. Disciplinary Rules
Prof’l Conduct R. 1.06(b), reprinted
in Tex. Gov’t Code Ann., tit.
2, subtit. G, app. A (West 2005) (Tex.
State Bar R. art. X, § 9).  However, professional ethics are different
from an “actual conflict of interest,” which has a specialized meaning in the Sixth
Amendment, ineffective-assistance-of-counsel context.  As noted above, an “actual conflict of
interest,” as opposed to other conflicts of interest, is one that would have an
actual, adverse effect on a trial counsel’s performance if acted upon.  See Mickens
v. Taylor, 535 U.S. 162, 172 n.5, 122 S. Ct. 1237, 1244 n.5 (2002); Acosta v. State, 233 S.W.3d 349, 356
(Tex. Crim. App. 2007); Routier v. State,
112 S.W.3d 554, 582 (Tex. Crim. App. 2003).





[3]           However,
a motion for new trial seeking to vacate an adjudication is governed by Texas
Rule of Appellate Procedure 21, entitled “New Trials in Criminal Case,” if the
motion for new trial is filed after a disposition order that is signed on or
after September 1, 2009.  TEX. FAM. CODE
ANN. § 56.01(b-1)(2) (West Supp. 2010) (effective September 1, 2009); Act of May
26, 2009, 81st Leg., ch. 642, § 3, 2009 Tex. Gen. Laws 2361.  Here, appellant’s motion for new trial is
accordingly governed by the requirements as in civil cases generally because
the order for disposition was signed on August 8, 2009.

 

            Nevertheless,
under the Texas criminal law, to challenge on appeal a trial court’s failure to
grant a hearing on a motion for new trial, a defendant must present the motion
to the trial court within ten days of filing. 
Gardner v. State, 306 S.W.3d
274, 305 (Tex. Crim. App. 2009) (citing
Tex. R. App. P. 21.6).  To present a
motion for new trial, (1) a defendant must put the judge on actual notice that
he desires the judge to take some action on his motion for new trial and (2)
there must be some documentary evidence or notation that the trial judge
personally received a copy of the motion. 
See id.  Here, although appellant’s appellate counsels
each attested to presentment in affidavits attached to a request for
preparation of reporter’s record, this does not constitute documentary evidence
or a notation as required to prove presentment. 
See id.  Appellant, therefore, did not comply with
the procedural requirements for a motion for new trial in a criminal case.