**Mario Rey RAMIREZ, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 13-97-736-CR.**

Court of Appeals of Texas,
Corpus Christi.

Feb. 24, 2000.

Rehearing Overruled March 31, 2000.

---

Cynthia T. Sheppard, Houston, Marek & Griffin, Victoria, for appellant.

Robert E. Bell, Crim. Dist. Atty., Edna, Jim Vollers, Austin, for State.

Before Chief Justice SEERDEN and Justices HINOJOSA and YANEZ.

**O P I N I O N**

Opinion by Justice YANEZ.

A jury found appellant, Mario Rey Ramirez, guilty of unlawful possession of a firearm by a felon, enhanced to a second-degree felony, and assessed punishment at twenty years confinement and a ten thousand dollar fine. In a single issue, appellant contends he was deprived of his state and federal constitutional rights to effective assistance of counsel and due process of law because of his trial counsel's actual conflict of interest. We reverse appellant's conviction and remand for a new trial.

On the evening of May 19, 1997, Ron Garrett, a City of Granado police officer, was working patrol duty and had stopped at a convenience store when he noticed appellant drive up erratically in a pickup. Garrett approached the vehicle, smelled alcohol, and when appellant was unable to produce his driver's license, asked him to step out of the vehicle. As appellant stepped out of the truck, he reached under the seat. Garrett pulled him up and instructed him not to move. Appellant ran,

Garrett followed, and following a brief struggle, subdued appellant with pepper spray. A license plate check and call to the vehicle's owner revealed the truck was stolen. A check run on appellant's license number, found in his back pocket, showed he was wanted for parole violations. A search of the truck produced a loaded pistol, found underneath the driver's seat. The truck's owner confirmed he had left an unloaded pistol on the floor of the back seat when the truck was stolen. At trial, Garrett and the truck's owner testified for the State.

The State then called Michael Crabb to testify. Appellant's counsel approached the bench and objected to the witness on the basis of surprise and because it presented a conflict. She advised the court that she represented Crabb in a separate pending criminal matter. She stated she had obtained confidential information from him and had discussed with him the possibility of using information to obtain favorable treatment. She told the court she had no warning that the State planned to call Crabb, and no opportunity to prepare or make arrangements to obtain another attorney. She informed the court the situation was "extremely prejudicial to [her] client," and if Crabb testified, she would be forced "to choose between acting to the detriment of one client and then to the other." She also told the court her position "may seriously jeopardize Mr. Ramirez' [sic] case and Mr. Crabb's." Appellant's counsel requested a recess and moved for a mistrial. The trial court denied these requests.

Crabb testified he had been appellant's cellmate for approximately two months. He testified appellant had told him he loaded the pistol found under the seat and that a police officer had seen appellant reach under the seat. Appellant's counsel briefly cross-examined Crabb to establish that she represented him and had obtained confidential information from him as a result of that representation. The following exchange occurred:

Q [Appellant's counsel]: There are things that you've told me that I can't reveal without your permission. Is that correct?

A [Crabb]: Yes.

Q: And you're not— are you giving me permission to reveal those things?

[State]: I object, your Honor. If it's about his case, those matters are irrelevant whether he has given permission or not. Those are not proper subjects of impeachment for his testimony in this case.

Court: Sustained.

[Counsel]: May I be heard on that, your Honor?

Court: Yes.

[Counsel]: The issue of confidentiality between a client and a lawyer does not relate solely to that client's case, but any discussions between that client and the other attorney, and I'm asking——

[State]: I can't hear, your Honor. I'm sorry. Can we approach the Bench? I can't hear what Ms. Hale [counsel] was saying. I'm sorry. I can't hear you.

A discussion was held off the record, and then the following proceedings were reported at the bench, presumably out of the hearing of the jury:

Court: Go ahead, Ms. Hale.

[Counsel]: Your Honor, as I stated previously, I am questioning Mr. Crabb in regard to this matter to see if he would be willing to waive his right of confidentiality, as I am his attorney, that the issues I would like to question him about relate to information that I received as his attorney. I cannot do that without his waiving his rights. I am bound to follow the state bar rules. If he does not waive it, I have no further questions for him. I am prejudiced in my ability to ask Mr. Crabb questions that any normal attorney could ask, based on the fact that he is my client. This prejudices Mr. Ramirez' [sic] case.

[State]: My objection, your Honor, is that whatever information she may have

received from Mr. Crabb about his previous case is irrelevant and not the subject of proper impeachment. Wouldn't matter whether he waived it or not.

Court: I agree and I'm going to sustain the objection.

[Counsel]: If I can say one more thing, your Honor?

Court: Yes.

[Counsel]: It is not simply what information I may have received from him, but the ability to question him at all without getting into areas of confidentiality to ask him certain questions that any other attorney could ask. I cannot do that without prejudicing Mr. Crabb's rights, of which I must be mindful.

[State]: My objection would be that it would not be proper impeachment to ask him about what he is charged with, unless it relates to any deals, and he already indicated he has no deals.

Court: Okay. You have my ruling.

[Counsel]: Yes.

Thereafter, appellant's counsel concluded her cross-examination of Crabb and moved for a mistrial on the basis that appellant's rights had been prejudiced. The trial court denied the motion.

During deliberations, the jury requested an opportunity to re-hear that portion of Crabb's testimony concerning appellant's admission regarding loading the pistol and reaching for it in the officer's presence.

 The Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defence." *Monre-*

al v. State, 947 S.W.2d 559, 564 (Tex.Crim. App.1997). The Sixth Amendment guarantees not just the right to counsel, but the right to the reasonably effective assistance of counsel. *Id.*(citing *Strickland v. Washington,* 466 U.S. 668, 686, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)). Ineffective assistance of counsel may result when an attorney labors under a conflict of interest. *Id.* In such a situation, counsel may breach the duty of loyalty, perhaps the most basic of counsel's duties. *Id.*In order for a defendant to demonstrate a violation of his right to the reasonably effective assistance of counsel based on a conflict of interest, he must show: (1) that defense counsel was actively representing conflicting interests, and (2) that the conflict had an adverse effect on specific instances of counsel's performance. *Ex parte Morrow,* 952 S.W.2d 530, 538 (Tex.Crim.App.1997) (citing *Cuyler v. Sullivan,* 446 U.S. 335, 348–49, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980)).[1]

 Great deference should be accorded the representations of an attorney who feels a division of loyalty. *Simons v. State,* 805 S.W.2d 519, 521 (Tex.App.— Waco 1991, no pet.) (citing *White v. Reiter,* 640 S.W.2d 586, 597 (Tex.Crim.App.1982)). Where there is evidence of counsel's "struggle to serve two masters" that cannot be seriously doubted, *Glasser v. United States,* 315 U.S. 60, 62 S.Ct. 457, 464, 86 L.Ed. 680 (1942), it follows that an accused's defense is "impaired." *Simons,* 805 S.W.2d 519 at 521 (citing *Cuyler,* 446 U.S. at 349, 100 S.Ct. 1708).

### Actual Conflict

 An "actual conflict" exists when an attorney represents two clients whose

---

1. In *Cuyler,* a case involving an attorney conflict of interest arising out of multiple representation, the United States Supreme Court held that a defendant can establish a violation of his Sixth Amendment right to the effective assistance of counsel if he can show "that an actual conflict of interest adversely affected his lawyer's performance." *Cuyler v. Sullivan,* 446 U.S. 335, 350, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980). Four years later, in *Strickland v. Washington,* 466 U.S. 668, 687–

694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the Court held that for ineffective assistance claims *not* involving alleged conflicts of interest, a defendant must usually show: (1) that his counsel's performance fell below an objective standard of professional competence, and (2) that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.*

interests in the outcome of a matter are different. *Perillo v. Johnson,* 79 F.3d 441, 447 (5th Cir.1996); *Monreal,* 947 S.W.2d at 564. When counsel is placed upon the "horns of a dilemma" as to services for one client over another, an actual and significant conflict exists and each client must be made aware of such conflict before the attorney may ethically proceed with the case. *Wenzy v. State,* 855 S.W.2d 52, 57 (Tex.App.—Houston [14th Dist.] 1993, pet. ref'd).

### Adverse Effect

▇▇▇ To prove adverse effect, an appellant need not show that the conflict changed the outcome of the trial. *Perillo,* 79 F.3d at 448. "Once it has been established that an actual conflict exists, prejudice to the defendant must be presumed." *Id.*(quoting *Mitchell v. Maggio,* 679 F.2d 77, 79 (5th Cir.), *cert. denied,* 459 U.S. 912, 103 S.Ct. 222, 74 L.Ed.2d 176 (1982)); *see also Cuyler,* 446 U.S. at 345–350, 100 S.Ct. 1708; *Maya v. State,* 932 S.W.2d 633, 635 (Tex.App.—Houston [14th Dist.] 1996, no pet.). To show adverse effect, an appellant must demonstrate that some plausible defense strategy or tactic might have been pursued but was not, because of the conflict of interest. *Perillo,* 79 F.3d at 449.

### Duty to Conduct Hearing

▇▇▇ The right to conflict-free counsel may be waived, but in order to be effective, the record must show the waiver was done knowingly, intelligently, and voluntarily. *United States v. Greig,* 967 F.2d 1018, 1021 (5th Cir.1992).[2] While a trial court does not always have an affirmative duty to inquire into the *possibility* of a conflict of interest, it does have a duty to conduct a hearing once it has been alerted——and certainly when it knows——of the

existence of an actual conflict of interest. *Id.* at 1022 (emphasis added).

In the present case, appellant's counsel objected to the State calling Crabb as a witness, advised the court that a conflict existed, and identified the conflict as arising out of representation of Crabb and knowledge of confidential information obtained from him as a result of that representation. She further advised the court that because of the conflict, she was precluded from cross-examining Crabb, and as a result, appellant's rights were prejudiced.

▇▇▇ It is well-established that a defendant is denied the effective assistance of counsel in those instances where an attorney is unable to cross-examine, or is chilled in the cross-examination of, a government witness because of the attorney/client privilege arising from counsel's prior representation of the witness or from his duty to advance the interests of the witness as a current client. *United States v. Soudan,* 812 F.2d 920, 927 (5th Cir.1986) (citing *United States v. Benavidez,* 664 F.2d 1255 (5th Cir.), *cert. denied,* 457 U.S. 1121, 102 S.Ct. 2936, 73 L.Ed.2d 1334 (1982)); *United States v. Martinez,* 630 F.2d 361, 362 (5th Cir.1980), *cert. denied,* 450 U.S. 922, 101 S.Ct. 1373, 67 L.Ed.2d 351 (1981); *Stephens v. United States,* 595 F.2d 1066 (5th Cir.1979) (actual conflict existed where defendant's attorney concurrently represented a prosecution witness). In *Martinez,* the defense attorney argued he had been entrusted with confidences by his prior client-turned-witness, and effective representation of the defendant would compel him to violate those confidences, especially during cross-examination of his former client. The court held in such circumstances, the defendant was denied ef-

---

2. The Fifth Circuit has held that in order for a defendant effectively to waive his right to conflict-free counsel, the trial court must conduct a hearing, now commonly known as a *Garcia* hearing. *See United States v. Garcia,* 517 F.2d 272 (5th Cir.1975). The purpose of the hearing is to ensure that the defendant: (1) is aware that a conflict of interest exists; (2) realizes the potential hazards to his defense by continuing with such counsel under the onus of a conflict; and (3) is aware of his right to obtain other counsel. *United States v. Greig,* 967 F.2d 1018, 1022 (5th Cir.1992).

fective assistance of counsel as a matter of law. *Martinez*, 630 F.2d at 363.

The State contends appellant's counsel merely asserted that a conflict of interest existed, but failed to specify how her inability to cross-examine Crabb constituted a conflict. Similarly, the dissent characterizes counsel's representations to the court as "conclusory assertions of a conflict and confidential information that might impact in some unspecified manner" on her cross-examination of Crabb. We disagree. Appellant's counsel specifically advised the court that her representation of Crabb and confidential information obtained as a result of that representation prejudiced her "ability to question him at all without getting into areas of confidentiality," and prejudiced appellant's case. The events in this case resulted in an actual conflict of interest and the record provides ample evidence that counsel's conflict had an adverse effect on appellant's trial.

In his dissent, Chief Justice Seerden contends appellant is not entitled to prevail because he failed to show his attorney labored under an actual conflict which adversely affected his lawyer's performance. Accordingly, we interpret the dissent as challenging both prongs under the *Cuyler* standard: (1) the showing that an actual conflict existed, *and* (2) if it existed, that it adversely affected counsel's performance. *See Perillo*, 79 F.3d at 447 (citing *Cuyler*, 446 U.S. at 348, 100 S.Ct. 1708).

Chief Justice Seerden cites *United States v. Olivares*, 786 F.2d 659, 663 (5th Cir.1986), in support of his argument that "[a]ctive representation of conflicting interests connotes more than merely cross-examining a former client." In *Olivares*, two co-defendants claimed their attorney was operating under a conflict of interest because a third co-defendant—prior to deciding to plead guilty and testify against his co-defendants—was, early in the case, briefly represented by the same attorney. *Id.* at 661–62. At trial, the third co-defendant, represented by separate counsel, testified against the two co-defendants and

was "thoroughly cross-examined" by the attorney. *Id.* at 662. In holding the attorney had not "actively represented conflicting interests," the court noted that the attorney's representation of the witness had terminated long before trial. *Id.* at 663. Moreover, during the brief time the attorney represented the witness, the two co-defendants had waived any conflict of interest arising from multiple representation. *Id.* at 663 n. 4. In the present case, the testifying witness was not a *former* client of appellant's counsel, but a client at the time of the trial, and counsel advised the court that unlike the attorney in *Olivares*, she was unable to "thoroughly" cross-examine the witness. In addition, unlike the defendants in *Olivares*, appellant did not waive the conflict arising from his attorney's representation of the witness.

In *Perillo*, the Fifth Circuit defined "actual conflict" as follows:

> An "actual conflict" exists when an attorney represents two clients whose interests in the outcome of a matter are different. We have found actual conflict when one client would benefit by a person testifying and one client would be harmed by it. "The petitioner must specifically identify instances in the record that reflect that his counsel made a choice between possible alternative courses of action such as eliciting (or failing to elicit) evidence helpful to one client but harmful to the other."

*Perillo*, 79 F.3d at 447–48 (citations omitted). In *Perillo*, the petitioner (Perillo) filed a petition for habeas corpus, claiming her Sixth Amendment right to counsel was violated at her capital murder trial because her attorney was simultaneously representing a key prosecution witness. *Id.* at 443. The Fifth Circuit held the attorney's actions created an actual conflict that adversely affected her. *Id.* at 451. The attorney had earlier represented the witness at trial on charges arising from the same criminal episode and more recently (during the petitioner's trial) had represented the witness at an out-of-state hear-

ing concerning her attempt to avoid being forced to testify for the prosecution at the petitioner's trial. While representing the witness in her efforts to avoiding testifying, the State of Texas offered her transactional immunity for her testimony. The Fifth Circuit held an actual conflict existed because the attorney's representation of the witness was concurrent with his representation of the petitioner, and the interests of his clients diverged when one was offered immunity to testify against the other. *Id.* at 448.

Following a determination that Perillo's attorney labored under an actual conflict, the Fifth Circuit court addressed whether the conflict adversely affected his representation of her. The court concluded that it had, holding that "to show adverse effect, a petitioner must demonstrate that some plausible defense strategy or tactic might have been pursued but was not, because of the conflict." *Id.* at 449. The court noted that the attorney's simultaneous representation of the witness and Perillo adversely affected Perillo by foreclosing two options: (1) taking actions to prevent the witness from testifying, and (2) aggressively cross-examining the witness. *Id.*

■ In the present case, as in *Perillo,* appellant's counsel simultaneously represented appellant and Crabb, and counsel was forced to choose between what was best for appellant (aggressively cross-examining Crabb) and what was best for Crabb (protecting the confidentiality of information obtained as a result of her representation of him).

■ The dissent distinguishes the present case from those involving multiple representation and notes that the conflict-generating scenarios likely to arise in such cases, such as inconsistent versions of the crime and blame-shifting, are not present here. "Actual conflict" is not limited, however, to only those circumstances identified by the dissent, but rather, exists whenever an attorney represents two clients with divergent interests. *Id.* at 447; *see, e.g.,*

*Castillo v. Estelle,* 504 F.2d 1243, 1245 (5th Cir.) (1974) (denial of right to effective representation where court-appointed defense lawyer also represented principal witness for prosecution in unrelated civil matter); *State v. Needham,* 298 N.J.Super. 100, 688 A.2d 1135 (Law Div.1996) (attorney's representation of criminal defendant improper where in unrelated matter, attorney previously represented police officer scheduled to be principal witness against defendant); *State v. James,* 111 N.C.App. 785, 433 S.E.2d 755 (1993) (new trial ordered where defense counsel in murder prosecution concurrently represented prosecution witness on other matter; due to conflict of interest, revealing confidential communications from either client might have been suppressed, and extensive cross-examination, particularly of impeaching nature, might have been held in check and hence, defendant was denied Sixth Amendment right to counsel); *see also, Ciak v. United States,* 59 F.3d 296 (2nd Cir.1995) (conflict of interest where defense counsel had previously represented client who testified for prosecution, as during cross-examination of former client, counsel may have chosen to "go easy" so as not to encroach upon matters protected by attorney-client privilege, or may have disregarded privilege, which also would be unethical). The dissent cites no authority in support of the proposition that "actual conflict" is limited to those situations involving multiple representation or representation arising out of the same criminal episode, and we decline to limit our holding to such circumstances.

The dissent notes that the State denied that Crabb had been given any "deal" for his testimony against appellant. The absence of such a deal, however, does not preclude the possibility that Crabb may have had other information of interest to the State (obtained from appellant or some other source) and was contemplating the possibility of a deal with the State. If so, he certainly would have discussed such an option with his attorney. Counsel told the

court, "the issues I would like to question him about relate to information that I received as his attorney." In such circumstances, counsel was presented with a clear conflict of interest.

 Finally, the dissent fails to address the trial court's failure to hold a hearing, as required by the Fifth Circuit in *Greig*, 967 F.2d at 1021. The purpose of the hearing is to ensure, once the trial court has been alerted that an actual conflict exists, that the defendant is aware of the conflict and to determine if he wishes to waive it.

We hold appellant was denied effective assistance of counsel and sustain appellant's issue. Accordingly, we REVERSE appellant's conviction and REMAND to the trial court for a new trial.

Dissenting Opinion by Chief Justice SEERDEN.

ROBERT J. SEERDEN, Chief Justice, dissenting.

I respectfully dissent from the majority opinion. I would affirm the trial court's judgment.

In order to show a violation of his Sixth Amendment right to effective assistance of counsel based on a conflict of interest, the defendant must show that his lawyer actively represented conflicting interests, and that an actual conflict of interest adversely affected his lawyer's performance. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 2067, 80 L.Ed.2d 674 (1984); *Cuyler v. Sullivan*, 446 U.S. 335, 100 S.Ct. 1708, 1719, 64 L.Ed.2d 333 (1980); *United States v. Olivares*, 786 F.2d 659, 663 (5th Cir.1986); *Perillo v. State*, 758 S.W.2d 567, 570 n. 3 (Tex.Crim.App. 1988).

Conflicts of this nature often occur in the context of multiple defendants represented by the same attorney at trial. Though there is no presumption of conflict, the courts recognize the potential for conflict and for the compromise of privileged information in multiple representation cases. *See Cuyler*, 100 S.Ct. at 1718 ("a possible conflict inheres in almost every instance of multiple representation"). Accordingly, the trial judge must, in the face of timely representations by counsel of a conflict, either appoint separate counsel or take adequate steps to ascertain whether the risk is too remote to warrant separate counsel. *Id.* at 1719.

At least in the context of multiple representation, "an attorney's request for the appointment of separate counsel, based on his representations as an officer of the court regarding a conflict of interests, should be granted." *Holloway v. Arkansas*, 435 U.S. 475, 98 S.Ct. 1173, 1179, 55 L.Ed.2d 426 (1978). This is, in part, because an "attorney representing two defendants in a criminal matter is in the best position professionally and ethically to determine when a conflict of interest exists or will probably develop in the course of a trial." *Id.* (quoting *State v. Davis*, 110 Ariz. 29, 514 P.2d 1025, 1027 (1973)).

Outside the context of multiple representation, the same general considerations have been applied when the lawyer previously represented a prosecution witness on charges arising out of the same transaction giving rise to the present charges against the defendant. *See United States v. Martinez*, 630 F.2d 361, 362–63 (5th Cir.1980), *cert. denied*, 450 U.S. 922, 101 S.Ct. 1373, 67 L.Ed.2d 351 (1981). The *Martinez* court noted that, under the circumstances, counsel's own representations that vigorous cross-examination would cause him to violate confidential communications and to "trench upon the confidential relationship between himself and [the witness/former client]" was sufficient to prove an actual conflict of interest. *Id.* at 363.

The present case, however, may be distinguished from cases of multiple representation or representation arising out of the same underlying criminal episode. The attorney-client relationship between Ramirez's counsel and Crabb did not arise out of the same criminal episode giving

rise to the charges against Ramirez, but was wholly separate. Accordingly, none of the obvious potentials for inconsistent versions of the crime or blame shifting are present here.

When Crabb was called as a witness by the State, Ramirez's attorney objected "on the basis of the fact that there is a conflict here. I represent this witness in another criminal matter. He has had discussions with me in regard to use of information possibly of obtaining favorable treatment. I have confidential knowledge in that regard, based on that representation. I am being forced, by his being called, to choose between acting to the detriment of one client and then to the other." However, she did not go into any more detail concerning the conflict, nor did she indicate clearly what she wanted the trial court to do, aside from either refusing to allow the witness to testify or declaring a mistrial. When asked for an example of how her actions would prejudice her client's rights, counsel refused to elaborate. Counsel for the State, moreover, denied that Crabb has been given any sort of a "deal" for his testimony against Ramirez that might figure into his dealings with counsel in connection with the separate charges against Crabb.

Active representation of conflicting interests connotes more than merely cross-examining a former client. *Olivares,* 786 F.2d at 663. The familiarity acquired in the separate attorney-client relationship may, in some cases, even facilitate a more vigorous and successful cross-examination. *Id.* at 664.

Therefore, although I acknowledge that counsel is an officer of the court and entitled to respect as such, I do not believe that her conclusory assertions of a conflict and confidential information that might impact in some unspecified manner upon the present cross-examination must be accept-

ed by the court at face value. She did not elaborate on the nature of the conflict or ask for an *in camera* hearing to show how confidences might be violated.[1]

In the absence of special circumstances, the trial court may assume that no conflict of interest exists between the criminal defendant and his attorney. *See Cuyler,* 100 S.Ct. at 1717. Accordingly, where there is no indication in the proceedings before the trial court of an actual conflict of interest, the trial court has no affirmative duty to inquire into the possibility of such a conflict. *United States v. Greig,* 967 F.2d 1018, 1022 n. 8 (5th Cir.1992); *United States v. Medel,* 592 F.2d 1305, 1312 (5th Cir.1979). The trial judge thus has a duty to investigate potential conflicts only "as long and as thoroughly as the circumstances of the case before him demand." *United States v. Garcia,* 517 F.2d 272, 277 (5th Cir.1975) (quoting *Von Moltke v. Gillies* [332 U.S. 708], 68 S.Ct. 316, 323 [92 L.Ed. 309] (1948) (regarding waiver of right to counsel generally)).

In the present case, the bare assertion of a conflict by the attorney, without either circumstances that would reasonably indicate a conflict or some other evidence to substantiate such a conflict, does not create a duty on the part of the trial court to conduct an independent investigation. Indeed, without further guidance as to the nature of the alleged conflict, the trial judge would have no guidance as to the nature of cross-examination being impaired.

I would hold that in order to trigger the trial court's duty to investigate a potential conflict of interest, the attorney must do more than merely cry "conflict." In the absence of circumstances like multiple representation that itself indicates the nature of the conflict, the attorney must at least make some minimal showing of the nature of the alleged conflict.

---

1. Cf. *Texas Board of Pardons & Paroles v. Miller,* 590 S.W.2d 142, 145 (Tex.Crim.App. 1979) (recognizing that, in order to protect the defendant's constitutional right to ade-

quately cross-examine a witness, the trial court may view allegedly confidential materials *in camera* before allowing their use to show bias, prejudice, or motive to testify).

Accordingly, I do not believe that Ramirez established an actual conflict of interest that adversely affected his lawyer's performance. I would overrule appellant's issue and affirm the judgment of the trial court.