

# NUMBER 13-12-00513-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

ERIC GRIMALDO,                                                        Appellant,

v.

THE STATE OF TEXAS,                                                  Appellee.

### On appeal from the 28th District Court
### of Nueces County, Texas.

## MEMORANDUM OPINION

### Before Justices Rodriguez, Benavides, and Longoria
### Memorandum Opinion by Justice Rodriguez

Appellant Eric Grimaldo challenges his conviction for continuous violence against a family member. *See* TEX. PENAL CODE ANN. § 25.11 (West 2011). After a jury found Grimaldo guilty, the trial court found he was a habitual felony offender and assessed punishment at twenty-five years in the Institutional Division of the Texas Department of

Criminal Justice. *See id.* § 12.42 (West Supp. 2011). By three issues, Grimaldo contends that (1) the evidence is insufficient to support his conviction; (2) counsel provided ineffective assistance; and (3) the trial court erred in failing to conduct a *Garcia* hearing on an alleged conflict of interest. *See United States v. Garcia*, 517 F.2d 272, 277 (5th Cir. 1975), *abrogated on other grounds by Flanagan v. United States*, 465 U.S. 259, 263 (1984). We affirm.

## I.   SUFFICIENCY OF THE EVIDENCE

By his first issue, Grimaldo complains that the evidence is not sufficient to establish that his wife, Loretta Sanchez, sustained bodily injury caused by his actions in a July 2011 incident.[1] More specifically, he argues that there is no evidence that Sanchez suffered pain or impairment of any physical condition that would support his conviction.

### A.   Standard of Review and Applicable Law

In evaluating the sufficiency of the evidence supporting a conviction, we view all the evidence in a light most favorable to the verdict and ask "whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Garcia v. State*, 367 S.W.3d 683, 686–87 (Tex. Crim. App. 2012) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). The trier of fact is the sole judge of the credibility of witnesses and the weight, if any, to be given to their testimony. *Id.*; *Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010) (plurality op.). "The reviewing court must give

---

[1] To convict Grimaldo of continuous violence against the family, the State must have established the two incidents of violence alleged in the indictment. *See* TEX. PENAL CODE ANN. § 25.11(a) (West 2011). The first incident occurred in August 2010, the second in July 2011. Regarding the first incident, the State elicited testimony from Loretta Sanchez that in August 2010 Grimaldo threw a baby bottle at her and struck her on the left side of her stomach. According to Sanchez, it caused a red mark, and it hurt. Grimaldo does not challenge the sufficiency of the evidence to establish this assault. He challenges the evidence only as to the second incident, which occurred in July of 2011.

deference to the responsibility of the trier of fact to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Jackson*, 443 U.S. at 318–19).

We measure the sufficiency of the evidence supporting a conviction "by the elements of the offense as defined by the hypothetically correct jury charge for the case." *Byrd v. State*, 336 S.W.3d 242, 246 (Tex. Crim. App. 2011) (citing *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)). "Such a charge is one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Villarreal v. State*, 286 S.W.3d 321, 327 (Tex. Crim. App. 2009).

As authorized by the indictment in this case, a person commits continuous violence against the family if the person (1) over a period of twelve months or less; (2) two or more times engaged in conduct that constitutes an offense under section 22.01(a)(1) against another person or persons; and (3) whose relationship to or association with defendant is described by sections 71.0021(b) (dating), 71.003 (family) or 71.005 (household) of the family code. *See* TEX. PENAL CODE ANN. § 25.11(a). A person commits the offense of assault under section 22.01(a)(1) if he intentionally, knowingly, or recklessly causes bodily injury to another. *See id.* § 22.01(a)(1) (West 2011).

"'Bodily injury' means physical pain, illness, or any impairment of physical condition." *Id.* § 1.07(a)(8) (West 2011). This definition is "purposely broad and seems to encompass even relatively minor physical contacts so long as they constitute more

than mere offensive touching." *Lane v. State*, 763 S.W.2d 785, 786 (Tex. Crim. App. 1989) (en banc); *see Aguilar v. State*, 263 S.W.3d 430, 433 (Tex. App.—Houston [1st Dist.] 2008, pet. ref'd); *Wead v. State*, 94 S.W.3d 131, 135 (Tex. App.—Corpus Christi 2003) (quoting *Lane*), *rev'd on other grounds*, 129 S.W.3d 126 (Tex. Crim. App. 2004). Accordingly, any physical pain, however minor, will suffice to establish bodily injury. *Garcia*, 376 S.W.3d at 688. In addition, the sensation of pain need not be contemporaneous with the blow, and even when the victim denies that he felt physical pain at the moment he was struck, his experience of pain later from the injury is sufficient to show a bodily injury caused by the assault. *See Aguilar*, 263 S.W.3d at 434.

The fact finder may also infer that a victim actually felt or suffered physical pain because people of common intelligence understand pain and some of the natural causes of it. *Garcia*, 367 S.W.3d at 688; *Morales v. State*, 293 S.W.3d 901, 910 n.3 (Tex. App.—Texarkana 2009, pet. ref'd); *Aguilar*, 263 S.W.3d at 434; *Randolph v. State*, 152 S.W.3d 764, 774 (Tex. App.—Dallas 2004, no pet.); *Goodin v. State*, 750 S.W.2d 857, 859 (Tex. App.—Corpus Christi 1988, pet. ref'd). So the fact of a physical intrusion on the body in the form of a cut or scrape can itself be sufficient evidence of the associated physical pain necessary to show "bodily injury." *Goodin*, 750 S.W.2d at 857 (citing *Bolton v. State*, 619 S.W.2d 166, 167 (Tex. Crim. App. 1981)); *but see Garcia*, 367 S.W.3d at 688 (merely being very cold for a short period of time is insufficient to show bodily injury). Such an inference may be made even without testimony from the victim that he felt pain or that the injuries in question hurt. *See Goodin*, 750 S.W.2d at 859. This Court has stated that, "[w]hile it may be preferable to have the complainant testify to that element [of bodily injury], that testimony is not required to sustain a conviction."

*Wead*, 94 S.W.3d at 135 (finding sufficient evidence in the complainant's appearance and specifically his swollen eye to support an inference of physical pain); *see Aguilar*, 263 S.W.3d at 434; *Wawrykow v. State*, 866 S.W.2d 96, 99–100 (Tex. App.—Beaumont 1993, no pet.) (explaining that the fact finder may infer that the complainant felt physical pain from the altercation itself even without direct evidence).

## B.    The Evidence

Grimaldo's wife, Loretta Sanchez, testified that, in July 2011, she and Grimaldo were fighting while they were in their van.   Sanchez was driving, and Grimaldo was a passenger.   Sanchez explained that she "started bickering at him," "he just backhanded me and hit me in my face while we were parked at the red light," and she started crying. Sanchez explained that Grimaldo struck her right eye; "[h]e backhanded me with the back end of his hand, but it was open, because he slapped me."   When asked how she felt after Grimaldo struck her, Sanchez said, "I guess I was just angry like, I don't know.   It didn't hurt at the time, but he did cut me [a little] with his ring he was wearing, his wedding band."

The trial court admitted pictures of Sanchez's face as State's Exhibits 1 and 2. From the exhibits, Sanchez identified her right eye as the one Grimaldo struck that day and said the pictures showed redness around the eye that was "kind of like slit a little bit in the corner."

The trial court admitted Defendant's Exhibit 1, which was Sanchez's written statement to the police.   On cross-examination, when asked why she wrote on her statement that on July 12, 2011, Grimaldo "lashed at my face" and not that he "backhanded" her, Sanchez responded that by her choice of words she meant "[h]e just

hit me like that," and "Well, I'm not that smart I guess, hurts. He just backhanded me." Sanchez also testified that she made a mistake on her statement when she reported that Grimaldo hit her left eye. On re-direct, Sanchez testified that Grimaldo hit her right eye and that after he hit her, her right eye was red and "slit a little bit in the corner." When asked to describe how she felt when she filled out the police report, Sanchez responded, "I was hurt, violated, abused, a lot of things."

Police Officer Manuel Dominguez testified for the State. Office Dominguez explained that when he responded to the July 2011 call, he observed a minor cut under Sanchez's eye.

## C. Discussion

Grimaldo argues that there is no evidence that Sanchez suffered pain or impairment of any physical condition that would support a finding that he caused her bodily injury. The basis for his argument is that Sanchez gave different accounts of what happened, including which eye was hit. Complaining of the self-contradictory nature of Sanchez's testimony, Grimaldo urges that "[n]o reasonable jury should have found Mr. Grimaldo guilty with this sort of foundation as a basis for a finding of guilty." We disagree.

Viewing all the evidence in a light most favorable to the verdict, there is sufficient evidence to show that Sanchez experienced pain, which satisfies the element Grimaldo challenges on appeal. *See Garcia*, 367 S.W.3d at 686–87 (citing *Jackson*, 443 U.S. at 319); *Aguilar*, 263 S.W.3d at 434. This is established by Sanchez's own testimony, the nature of her injuries, and the affirmative indication in her written statement that the injury was painful.

6

Sanchez testified that Grimaldo struck her in the face with the back of his open hand and that she started crying. She received a cut under her eye that she said was caused by Grimaldo's wedding band. According to Sanchez's testimony, the pictures of her face after the incident showed some redness around her eye that was "kind of like slit a little bit in the corner." Officer Dominguez supported this testimony, explaining that he observed a minor cut under Sanchez's eye when he responded to the July 2011 call. Sanchez's written statement also reported that Grimaldo's conduct was painful, and Sanchez testified that when she filled out her report she "was hurt, violated, abused, a lot of things."

The fact that Sanchez made contradictory or inconsistent statements does not destroy her testimony as a matter of law. *See McDonald v. State*, 462 S.W.2d 40, 41 (Tex. Crim. App. 1971) (evidence legally sufficient to support aggravated assault conviction based on prosecuting witness's testimony even though her testimony was inconsistent); *Reed v. State*, 991 S.W.2d 354, 360 (Tex. App.—Corpus Christi 1999, pet. ref'd). As the fact finder, the jury is entitled to judge not only the credibility of each witness, but to accept some portions of a witness's testimony and reject other portions. *Chambers v. State*, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991) (en banc); *Bowden v. State*, 628 S.W.2d 782, 784 (Tex. Crim. App. 1982) (op. on reh'g). Therefore, any conflicts between Sanchez's trial testimony and her prior statement were matters for the jury to reconcile. *Reed*, 991 S.W.2d at 360. We must presume that the jury resolved the conflict in favor of the prosecution and defer to that resolution. *See Garcia*, 367 S.W.3d at 687; *Brooks*, 323 S.W.3d at 899 n.13; *Hooper*, 214 S.W.3d at 13.

Based on the evidence, the trier of fact, who was the sole judge of the credibility of

7

witnesses and the weight to be given to their testimony, could have found by the direct evidence or by inference that Grimaldo caused Sanchez bodily injury. *See Garcia*, 367 S.W.3d at 686–88; *Goodin*, 750 S.W.2d at 859; *see also* TEX. PENAL CODE ANN. §§ 22.01(a)(1), 25.11(a). We conclude the evidence was sufficient to support the conviction and overrule Grimaldo's first issue.

## II.   INEFFECTIVE ASSISTANCE OF COUNSEL

By the second issue, Grimaldo contends that his trial counsel provided him ineffective assistance based on a conflict of interest. Grimaldo claims that (1) a conflict existed because his defense counsel represented Sanchez in an earlier criminal case, and (2) prejudice should be presumed because the conflict had an adverse effect on trial counsel's performance in this case.

## A.   Standard of Review and Applicable Law

We usually analyze ineffective assistance claims under the standard set forth in *Strickland v. Washington*. 466 U.S. 668, 687 (1984). However, when one asserts ineffective assistance based on a conflict of interest, *Cuyler v. Sullivan* provides the proper standard for our review. 446 U.S. 335, 350 (1980); *Acosta v. State*, 233 S.W.3d 349, 352–53 (Tex. Crim. App. 2007) (holding that the *Cuyler* standard is the proper standard to analyze claims of ineffective assistance because of a conflict of interest); *Owens v. State*, 357 S.W.3d 792, 794 (Tex. App.—Houston [14th Dist.] 2011, pet. ref'd); *see Ramirez v. State*, 13 S.W.3d 482, 487 (Tex. App.—Corpus Christi 2000, pet. dism'd).

Under the *Cuyler* test, the appellant must show that (1) his counsel was burdened by an actual conflict of interest, and (2) his counsel actually acted on behalf of those other interests during the trial. *Cuyler*, 446 U.S. at 349–50; *Acosta*, 233 S.W.3d at 355. An

actual conflict of interest exists if counsel is required to make a choice between advancing his client's interest or advancing other interests, including his own, to the detriment of his client's interests. *Monreal v. State*, 947 S.W.2d 559, 564 (Tex. Crim. App. 1997) (en banc). The mere possibility of a conflict, without more, will not justify reversal. *Cuyler*, 446 U.S. at 350; *Pollan v. State*, 612 S.W.2d 594, 596 (Tex. Crim. App. 1981).

## B. Discussion

Grimaldo claims, under the first prong of *Cuyler,* that defense counsel had an actual conflict of interest in this case. *See* 446 U.S. at 349–50; *Acosta*, 233 S.W.3d at 355. He argues that this contention is supported by the fact that counsel neither thoroughly explored nor developed testimony regarding Sanchez's assaultive conduct toward him until the sentencing hearing. At that time, when counsel asked Sanchez, "So if charges had been filed against you, you would have been guilty of a continuous family violence charge with Eric Grimaldo as the victim . . . ?", Sanchez answered, "Probably so." Grimaldo asserts that "[t]here may have been a self-defense issue or even a mutual combat defense, but because [Sanchez's] prior assaultive behavior was not adequately brought up in trial, the issues were never put to the jury."

First, we disagree that counsel did not develop Sanchez's assaultive behavior further at the guilt phase of the trial, as Grimaldo argues. Instead, during his cross-examination of Sanchez, counsel elicited testimony that, as recently as two weeks before trial, she threw something at Grimaldo and he called for an ambulance. Counsel then attempted to elicit testimony about Sanchez, telling him that she was the one who started the fight because she was high and that she felt bad about Grimaldo being arrested. And he asked Sanchez about her own prior drug use and the possibility of

9

losing her children to Child Protective Services. At the punishment hearing, counsel again cross-examined Sanchez about her own assaultive behavior. He also questioned Sanchez about her drug use, which included buying drugs for both Grimaldo and herself.

Second, Grimaldo only speculates as to what might have happened had counsel developed additional testimony during the guilt phase regarding Sanchez's actions. The mere possibility of a conflict as Grimaldo attempts to suggest through this argument, without more, will not justify reversal. *See Cuyler*, 446 U.S. at 350; *Pollan*, 612 S.W.2d at 596. We cannot conclude that there is a conflict of interest in this case based on mere speculation. *See Cuyler*, 446 U.S. at 350.

Finally, there is no evidence regarding any specific privileged information that counsel obtained because of the prior representation that could have given rise to a conflict of interest.[2] The record does reveal, however, that after the court empanelled the jury and before trial began, the State notified the court that Sanchez had previously been represented by Grimaldo's trial attorney and expressed concern about a possible conflict of interest. Sanchez confirmed that Grimaldo's trial counsel had represented her some seven years earlier on a criminal matter. Grimaldo's counsel admitted that

---

[2] As the Texas Court of Criminal Appeals noted, "[G]enerally a claim of ineffective assistance of counsel may not be addressed on direct appeal because the record on appeal is usually not sufficient to conclude that counsel's performance was deficient." *Andrews v. State*, 159 S.W.3d 98, 103 (Tex. Crim. App. 2005). Given that "[t]he reasonableness of counsel's choices often involve facts that do not appear in the appellate record," "[a] petition for writ of habeas corpus usually is the appropriate vehicle to investigate ineffective-assistance claims." *Mitchell v. State*, 68 S.W.3d 640, 642 (Tex. Crim. App. 2002) (en banc). Indeed, "[i]n most ineffective[-]assistance claims, a writ of habeas corpus is essential to gathering the facts necessary to adequately evaluate such claims." *Ex parte Torres*, 943 S.W.2d 469, 475 (Tex. Crim. App. 1997); *see also Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999) ("A substantial risk of failure accompanies an appellant's claim of ineffective assistance of counsel on direct appeal. Rarely will a reviewing court be provided the opportunity to make its determination on direct appeal with a record capable of providing fair evaluation of the merits of the claim . . . .").

Sanchez had been a prior client and that she brought Grimaldo to his office in connection with the present case. But counsel claimed that he was not aware of any conflict of interest. And Sanchez specifically waived any attorney-client privilege that she might have had concerning her prior communications with counsel and the questions he might ask her in Grimaldo's trial.

Based on the above, more is required before we can conclude that a conflict actually exists. *See Acosta*, 233 S.W.3d at 355. Nothing in the record substantiates Grimaldo's speculative contentions. Counsel's own denial of a conflict and his cross-examination of Sanchez refute this argument. The mere fact that Grimaldo's defense counsel had represented Sanchez does not prove any actual conflict. Grimaldo has not shown that his trial counsel was required to make a choice between advancing Grimaldo's interest or advancing other interests, including Sanchez's or his own, to Grimaldo's detriment. *See Monreal*, 947 S.W.2d at 564. We conclude that Grimaldo has not shown that his trial counsel was burdened by an actual conflict of interest. *See Cuyler*, 446 U.S. at 350.

Because Grimaldo did not satisfy the first prong of *Cuyler*, we need not address the second prong—that counsel actually acted on behalf of those other interests during the trial. *See id.*; *see also* TEX. R. APP. P. 47.1. We overrule Grimaldo's second issue.

### III.    *GARCIA* HEARING

By his third issue, Grimaldo contends that the trial court erred when it failed to conduct a *Garcia* hearing, which is an inquiry into the propriety of multiple representations if the trial court knows or reasonably should know that a particular conflict exists. *See United States v. Greig*, 967 F.2d 1018, 1022 (5th Cir. 1992) (citing *Garcia*, 517 F.2d at

11

277); *Ramirez*, 13 S.W.3d at 487. Acknowledging that the trial court held a hearing, Grimaldo claims that it was not a *Garcia* hearing but was only a hearing to determine whether Sanchez waived the attorney-client privilege; it was not a hearing to determine whether Grimaldo would waive the conflict.

A *Garcia* hearing is required only if the trial court has been alerted to or knows of the existence of an actual conflict of interest. *See Greig*, 967 F.2d at 1022 (citing *Garcia*, 517 F.2d at 277); *Ramirez*, 13 S.W.3d at 487. Having concluded that the record, which includes the hearing referenced by Grimaldo, does not support an actual conflict of interest, the trial court did not err if it did not conduct a *Garcia* hearing. We overrule Grimaldo's third issue.

## IV. CONCLUSION

We affirm.

NELDA V. RODRIGUEZ
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
11th day of July, 2013.

12