**Affirmed and Majority and Dissenting Opinions filed May 19, 2015.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-13-00559-CR

---

## JUAN QUINTERO, Appellant

## V.

## THE STATE OF TEXAS, Appellee

---

**On Appeal from the 228th District Court**
**Harris County, Texas**
**Trial Court Cause No. 1368190**

---

# D I S S E N T I N G   O P I N I O N

Today the court must determine whether appellant Juan Quintero is entitled to a new trial based on his counsel's actual conflicts of interest. Convicted of aggravated sexual assault of a child as part of a plea-bargain agreement with the State, appellant asserts his retained counsel rendered ineffective assistance because the conflicts colored counsel's actions. At the heart of the appeal is appellant's contention that counsel advised appellant to plead "guilty" while laboring under actual conflicts of interest. To decide the issue we must determine the adverse

impact, if any, of the conflicts. The majority concludes that appellant suffered no adverse impact and that the evidence supports an implied finding that appellant knowingly, intelligently, and voluntarily entered the plea. I respectfully disagree.

### *Applicable Legal Standard*

In most cases, ineffective-assistance-of-counsel claims are assessed under the familiar two-prong test set out in *Strickland v. Washington,* which requires the appellant to prove that (1) counsel's representation fell below an objective standard of reasonableness; and (2) but for counsel's unprofessional errors, the result of the proceeding would have been different.[1] But, when one asserts that the ineffective assistance derived from a conflict of interest, the appellate court assesses the ineffective-assistance claim under the less-onerous standard articulated in *Cuyler v. Sullivan.*[2]

To prevail on his conflict-of-interest ineffectiveness claim, appellant must prove by a preponderance of the evidence that (1) appellant's counsel had an actual conflict of interest and (2) the conflict actually colored counsel's actions while representing appellant.[3] "An 'actual conflict of interest' exists if counsel is required to make a choice between advancing his client's interest in a fair trial or advancing other interests (perhaps counsel's own) to the detriment of his client's interest."[4] In the simplest terms, appellant must show counsel actually acted on

---

[1] *See Acosta v. State*, 233 S.W.3d 349, 352 (Tex. Crim. App. 2007).

[2] *See id.* at 352–53; *Ex parte McCormick*, 645 S.W.2d 801, 805 (Tex. Crim. App. 1983) (holding, in habeas proceeding, that petitioner was entitled to new trial because counsel's conflict of interest adversely affected petitioner).

[3] *Odelugo v. State*, 443 S.W.3d 131, 136 (Tex. Crim. App. 2014) (citing *Cuyler v. Sullivan*, 446 U.S. 335, 350 (1980)).

[4] *Monreal v. State,* 947 S.W.2d 559, 564 (Tex. Crim. App. 1997). *See Lopez v. State*, 428 S.W.3d 271, 283 (Tex. App.—Houston [1st Dist.] 2014, pet. ref'd).

behalf of other interests, and that appellant was adversely impacted as a result.[5] To prove an adverse impact, appellant need not show that the conflict changed the outcome[6] or that but for the adverse impact appellant would not have pled "guilty."[7] All that is required is a showing that counsel acted (or chose not to act) to pursue other interests and that appellant thereby suffered some adverse effect.

### Counsel's Actual Conflicts of Interest

Appellant's young niece made outcry that appellant had sexually assaulted her. Appellant's counsel represented both appellant and the complainant's father, who is appellant's brother. The father's interests in appellant's case diverged from appellant's interest. While appellant's interest was to minimize adverse consequences of potential conviction and punishment for the charged offense, the undisputed evidence shows that the father's interests were (1) to seek justice for the complainant and against the perpetrator of the crime and (2) to avoid any adverse action from the Texas Department of Family and Protective Services, including action that might jeopardize his rights to possession of his children. The objectives of appellant and the objectives of the father were incompatible from the beginning, but the conflicts became increasingly apparent as the case progressed.

Appellant's interests and the father's interests collided head-on when the father received a call from the District Attorney's Office requesting input on appellant's prospective punishment. The father, in turn, sought counsel's advice regarding the District Attorney's inquiry. In advising the father, counsel found

---

[5] *Cuyler*, 446 U.S. at 349–50.

[6] *Gonzales v. State*, 605 S.W.2d 278, 280–81 (Tex. Crim. App. 1980); *Perillo v. Johnson*, 79 F.3d 441, 448 (5th Cir. 1996).

[7] *See Gonzales*, 605 S.W.2d at 280–81. If appellant establishes an actual conflict, prejudice is presumed. *Maya v. State*, 932 S.W.2d 633, 635 (Tex. App.—Houston [14th Dist.] 1996, no pet.); *Perillo*, 79 F.3d at 448.

himself between a rock and a hard place—counsel was required to make a choice between advancing appellant's interests on one hand and advancing the father's interests on the other.[8]  Whatever choice the lawyer made would promote the interests of one client while compromising the interests of the other.

Up to that point, appellant's counsel had characterized his representation of the two clients as posing only a "potential" conflict despite the facial incompatibility of the clients' respective interests.  Counsel was operating under the belief that his clients' divergent interests would lead to an actual conflict only if both cases were tried, and, according to counsel, the outcome was up to him.  Appellant's counsel advised both appellant and the father of what counsel described as a "potential" conflict.  Counsel then presented both clients with written waivers.  Both clients signed the waivers.[9]

Appellant's counsel filed appellant's waiver in the trial court, but the trial court refused to approve the waiver of the conflict.  According to the trial court, the conflict was unethical.[10]  Even assuming (for argument's sake) the accuracy of counsel's early assessment of the simultaneous representation of the two clients as creating only a "potential" conflict, at the point of the District Attorney's inquiry to

---

[8] *See Pina v. State*, 29 S.W.3d 315, 320 (Tex. App.—El Paso 2000, pet. ref'd) (holding that counsel's action were colored by conflict when attorney representing two brothers failed to call one brother to testify for fear that testimony might incriminate other brother).

[9] In this written document, appellant sought to waive a potential conflict, not an actual conflict; the trial court declined to accept the waiver.  Even if this waiver were an accepted waiver of an actual conflict, the waiver was not knowing, intelligent, or voluntary because the record shows that appellant was not aware of the actual conflict and did not realize the consequences of continuing with counsel's representation.  *See Maya*, 932 S.W.3d at 636 (noting that absent an express, voluntary waiver, an actual conflict of interest that hinders the effectiveness of counsel will mandate a new trial).

[10] The trial court, though expressly disapproving of the conflict waiver, did not stop counsel from continuing to represent appellant.

the father, the dual representation posed an actual conflict of interest. Likewise, when appellant's counsel responded to appellant's request for advice regarding a plea-bargain offer from the State, counsel was acting under an actual conflict of interest. At that point, appellant's counsel was required to make a choice between advancing his own economic interests and advancing appellant's interests. The former could only come at the cost of the latter.

Both the economic-self-interest conflict between counsel and appellant and the divergent-client-interests conflict between appellant and the father required appellant's counsel to choose between opposing interests. The record contains sufficient evidence showing counsel had actual conflicts of interest.[11]

### Actions Colored by Conflicts of Interests

Counsel's conflicts of interest colored his actions during his representation of appellant.[12] Counsel testified that he concluded he could not take both appellant's case and the father's case to trial. In tacit recognition of the actual conflict, counsel admitted that he would have to withdraw from one representation unless at least one of the clients accepted a plea bargain. The evidence shows that this conflict influenced counsel's representation of appellant. After the trial court refused to approve appellant's waiver of the conflict, counsel chose not to disclose that information to appellant. Counsel never informed either of the clients that the trial court had considered the waiver and expressly refused to approve it. Nor did counsel disclose to appellant the trial court's conclusion that the dual representation was unethical or inform appellant that the trial court advised counsel to discontinue the dual representation. This information was material. Indeed, had

---

[11] *See Ramirez v. State*, 13 S.W.3d 482, 486–87 (Tex. App.—Corpus Christi 2000, pet. dism'd).

[12] *See id.* at 486 (holding that evidence counsel struggled to "serve two masters" shows that an accused's defense has been impaired).

appellant known the trial court did not approve of counsel's simultaneous representation of appellant and the father or that the trial court had denounced the representation as unethical, appellant might well have made a different decision about waiver and choice of counsel.

An attorney serving his clients' interests would have disclosed this information to the clients so that the clients could make informed decisions regarding their choice to continue being represented by an attorney with actual conflicts of interest. The only reasonable interpretation of counsel's testimony and the clients' testimony is that counsel briefly informed the clients that there might be a potential conflict of interest, but counsel did not explain the ramifications of any conflict to appellant or advise appellant as to how being represented by an attorney with conflicts of interest might affect the representation appellant was to receive. Because the father's goals and interests were at cross-purposes with what appellant hoped to achieve, the interests of both could not be served by the same counsel at the same time.

The majority emphasizes the trial court's role as the fact-finder and the possibility that the trial court may have discredited the clients' testimony and believed only the attorney's testimony.[13] The majority states that the only

---

[13] The trial court explained it agreed with appellant's position "morally" and "ethically" and lamented the "light this puts our profession in," but, the trial judge concluded:

> I've been on the bench long enough, and as a prosecutor and defense lawyer long enough to know that sometimes people plead guilty to things that they didn't do because they believe it's in their best interest to do so because they [sic] rather take six years than fifty. And my understanding of the law is, as long as you do that knowingly and intelligently, that's what it's going to be.

> And so I don't know if he did it or not, never will; even if there was a trial, I wouldn't know. Okay. I would just know what the evidence was, what the proof was, but I would never know that answer.

> So, even in light of your very convincing argument, I have to deny the motion.

evidence that showed counsel's actions were colored by conflicts of interest is disputed. This assessment is incorrect. Even if the trial court believed counsel's testimony and disbelieved the testimony of both appellant and the father, the undisputed evidence shows the conflicting interests colored counsel's actions.

*Economic Self-Interest Conflict*

Counsel testified that he would have to withdraw, and therefore suffer adverse financial consequences, unless one of the clients pled "guilty." Counsel chose not to advise appellant that the trial court had refused to approve the waiver of the conflict, an action which suggests counsel was motivated to keep the business of both clients or, at least, prevent them from learning the trial court's view of the matter. Counsel's explanation for failing to fully articulate the implications of the conflicts of interest was that, in his view, the conflicts of interest would not be an issue as long as at least one client pled "guilty." Counsel then refrained from taking any action to investigate the State's case against appellant.[14] When the State offered appellant a plea bargain, counsel advised appellant to plead "guilty" even though counsel did not know anything about the State's case against appellant, including whether it was a weak case or a strong case. Appellant accepted counsel's advice and pled "guilty." In counsel's mind, appellant's "guilty" plea eliminated any conflict of interest and allowed counsel to continue representing both appellant and the father. The evidence shows that counsel's actions and his choices not to act were colored by a conflict between his interest in retaining both clients and appellant's interest in minimizing adverse consequences of conviction and punishment, an interest served by appellant's

---

[14] Even assuming that the majority is correct that appellant's failure to preserve error forecloses this court from considering appellant's argument that he received ineffective assistance of counsel because his counsel did not conduct an adequate investigation, under the *Cuyler* standard this court still must consider counsel's inaction to the extent the inaction was colored by counsel's conflict of interest. *See Cuyler v. Sullivan*, 446 U.S. 335, 349–50 (1980).

pleading "guilty" only if the State's case against appellant was strong.

*Divergent-Client-Interests Conflict*

Counsel's representation of appellant also was colored by a conflict of interest between appellant (the accused) and the father of the accuser. The undisputed evidence shows the District Attorney's Office contacted the father to discuss the father's thoughts on an appropriate punishment for appellant. The father and counsel both testified that the father asked counsel for advice in responding to this prosecutorial inquiry. Appellant's interest was in securing statements from the father that would convince the District Attorney to minimize consequences for appellant. In this instance, the father testified that at the time he believed appellant to be innocent of the charges and that the proper punishment would be no punishment.

According to the father, counsel thought the father had an interest in not disclosing his opinion that appellant was innocent because that opinion might cause the father to lose custody of his children. The father testified that counsel advised him to keep silent about his opinion that appellant was innocent, lest appellant risk losing custody of his children. Counsel disputed this testimony. Even assuming the trial court discredited the father's testimony, counsel's account of this incident itself is sufficient to show that the actual conflict of interest colored counsel's actions.

Counsel testified that he told the father to tell the District Attorney's Office "whatever [father] wanted." This advice was not zealous representation of appellant, who was seeking a lesser sentence than the District Attorney's Office was proposing. The majority notes counsel testified that he did not know the father wanted to make a supportive statement. But, counsel's unawareness of what the father would say condemns rather than excuses counsel's failure to act.

8

Counsel's testimony that he did not know what the father would say shows counsel chose to advise the father without undertaking to investigate what, if anything, the father could offer that might further appellant's goals of minimizing the consequences of potential conviction and punishment. Counsel's decision not to make inquiry and not to investigate prompts important questions:

- *Would an attorney not laboring under a conflict of interest fail to ask the father what he wanted to say?*

- *Would an attorney zealously representing only appellant's interests squander the opportunity to attempt to secure a supportive statement on behalf of appellant?*

At this critical point in counsel's representation of appellant, counsel chose not to inquire and not to investigate. Doing so would have furthered appellant's interests but compromised the father's interests. Counsel could not serve the interests of both clients. Counsel chose not to serve appellant's interests.

By choosing to do nothing, counsel lost the opportunity to learn what the father would say and attempt to secure a statement from the father in support of appellant.[15] The conflict of interest affected counsel's actions — he failed to make inquiry and he failed to advocate on appellant's behalf while interacting with the father.[16]

### Cuyler Standard Satisfied

The undisputed evidence shows the conflicts of interest colored counsel's actions as well as his advice.[17] Accordingly, the *Cuyler* standard is satisfied.

---

[15] *See Lopez*, 358 S.W.3d at 694–95.

[16] *See Ex Parte Parham*, 611 S.W.2d 103, 105 (Tex. Crim. App. 1981) (holding in habeas proceeding that an attorney's "divided loyalties" adversely affected his representation when he advised a client not to testify while his duty to another client was to secure the testimony).

[17] *See id.*; *Ramirez*, 13 S.W.3d at 486; *Pina*, 29 S.W.3d at 320; *Maya*, 932 S.W.2d at 635.

*Conclusion*

Counsel had actual conflicts of interest and that those conflicts colored his representation of appellant. Therefore, the court should sustain appellant's first issue and reverse and remand the case to the trial court for a new trial.


/s/      Kem Thompson Frost
Chief Justice


Panel consists of Chief Justice Frost and Justices Busby and Christopher (Busby, J. majority).
Publish — TEX. R. APP. P. 47.2(b).